IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

|                                              |   |                              |
|----------------------------------------------|---|------------------------------|
| UNITED STATES OF AMERICA                     | ) |                              |
|                                              | ) | Case No. 2:14CR00001         |
| v.                                           | ) | **OPINION AND ORDER**        |
|                                              | ) |                              |
| **DOUGLAS EUGENE STEPHENS,**                 | ) | By: James P. Jones           |
| **CONSTANCE NICOLE STEPHENS, and**           | ) | United States District Judge |
| **CECIL A. MCCONNELL, JR.,**                 | ) |                              |
|                                              | ) |                              |
| Defendants.                                  | ) |                              |

*Zachary T. Lee*, Assistant United States Attorney, Abingdon, Virginia, for United States; *Brian J. Beck*, Assistant Federal Public Defender, Abingdon, Virginia, *Michael A. Bragg*, Bragg Law, Abingdon, Virginia, and *A. Benton Chafin, Jr.*, and *Katherine Crabtree*, Chafin Law Firm, P.C., Lebanon, Virginia, for Defendants.

The defendants, charged with trafficking in controlled substance analogues, have moved to suppress evidence obtained pursuant to search warrants. The defendants argue that the search warrants were not supported by probable cause. Following a hearing, I will deny the motions for the reasons that follow.

I.

The defendants are charged by indictment with conspiracy to distribute and possess with intent to distribute UR-144, XLR-11, 5F-PB-22, and PB-22 — all alleged to be Schedule I controlled substance analogues under 21 U.S.C. § 802(32) — in addition to other related offenses. Prior to these charges, search warrants

were executed at Cecil's Variety Store (owned by defendant McConnell), at the store Get it Here (owned by defendant Douglas Stephens), and at the Stephens' residence, all of which are located in Pound, Virginia. The search warrants were issued separately by state and federal judicial officers, based upon sworn law enforcement affidavits. As a result of the searches, law enforcement officers seized merchandise, cash and other property.

The defendants have moved to suppress the evidence yielded by the searches on the ground that there was not probable cause to support the search warrants. They contend that the affidavits inadequately alleged that the substances sold by the defendants, particularly XLR-11, are controlled substance analogues, and that the controlled buys discussed in the affidavits were too remote in time to support probable cause. A joint hearing was conducted on the motions, at which the court heard testimony from the officers who authored the affidavits supporting the search warrants and received copies of the relevant affidavits and documents.[1] From the evidence presented at the hearing, I find the following facts:

---

[1] While I received this evidence without objection, the defendants did not contend that they were entitled to a so-called *Franks* hearing — that, is an evidentiary hearing by which the defendants would attempt to show that the affidavits contained false statements or those made with a reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). No such claims are made in this case. The only issues are whether the affidavits themselves demonstrated probable cause or whether, in any event, the evidence is saved by the good-faith exception to the exclusionary rule.

1. On September 23, 2013, a search warrant was executed by state police officers at Cecil's Variety Store. Numerous items were seized as a result of the search, including merchandise, cash and other property.

2. The warrant was based on the affidavit of Lieutenant Larry Mullins, an investigator with the Wise County, Virginia, Sheriff's Office. Lt. Mullins has been a law enforcement officer for eighteen years, ten years of which he has been assigned to a regional narcotics task force. He has received numerous narcotics investigation training courses, and has participated in a variety of undercover narcotics operations, including ones involving the sale of synthetic cannabinoids by individuals and businesses. He has also researched synthetic cannabinoids, their chemical makeup and physiological effects, and distribution patterns in Wise County. Prior to presenting his affidavit to the state magistrate, Lt. Mullins obtained its approval by an attorney who was the chief prosecutor for the county.

3. The affidavit supporting the warrant stated as follows. In recent years, Lt. Mullins has observed the manufacture and distribution of synthetic cannabinoids with slightly varied compounds that produce the same physiological effects in order to circumvent newly enacted federal and state laws. These substances are considered to be hallucinogens and affect the body in a similar way to THC, the active ingredient in marijuana. Lt.

Mullins has observed the distribution of synthetic cannabinoids in Wise County, Virginia, since 2011 by individuals, small businesses and major retailers, and he has also observed related property crimes.

4. According to the affidavit, on December 21, 2012, Lt. Mullins purchased in an undercover capacity three grams of alleged synthetic cannabinoid, labeled "Shpark in the Dark," at Cecil's Variety Store. A laboratory test later revealed the substance to contain XLR-11. At the time of purchase, Lt. Mullins observed what he believed to be synthetic cannabinoids offered for sale in assorted packages with differing weights and brand names.

5. On September 18, 2013, a confidential informant working undercover conducted a second controlled buy at Cecil's Variety Store of three grams of a substance labeled "Darkness." The affidavit does not allege that this substance was subjected to a laboratory test. According to Lt. Mullins, the informant has given him reliable and credible information and assistance in the past.

6. On September 24, 2013, a second search warrant was executed at the Get it Here store and the Stephens' residence, which is located adjacent to the store across a gravel road. The search resulted in the seizure of merchandise, cash, and other property.

7. The warrant for this second search was based on the affidavit of Special Agent Ryan Temm of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF"). Agent Temm has been employed by the ATF for five years. He has received training in investigative techniques, including the preparation of search warrants, and has participated in numerous narcotics trafficking investigations, including ones involving synthetic cannabinoids.

8. The affidavit supporting the second warrant stated as follows. On January 23, 2013, an undercover agent from the Southwest Virginia Drug Task Force (the "DTF") purchased 1.5 grams of suspected synthetic cannabinoid labeled "Kraker" from Get it Here, as well as pipe screens and a smoking pipe. A laboratory test revealed the substance to contain XLR-11 and 5F-AKB48. During the purchase, the undercover agent observed various packages of what appeared to be synthetic cannabinoids with different brand names. The undercover agent had seen some of the same brands during other undercover synthetic cannabinoid purchases.

9. The affidavit alleged that investigators with state police and the DTF had uncovered a conspiracy to distribute synthetic cannabinoids from retail stores in Wise County, Virginia, primarily between Douglas Stephens, Emmanuel Vestal and Cecil McConnell. This alleged conspiracy involved

importing synthetic cannibinoids from other states and undercutting prices throughout the area in order to shut down competing businesses. The affidavit describes interviews with several of those involved in the conspiracy, including Vestal.

10. On September 17, 2013, an undercover agent from the DTF purchased two grams of "Kraker," alleged to be synthetic marijuana, and a smoking pipe from Get it Here. Laboratory test results of the substance, if any, did not appear in the affidavit.

## II.

The Fourth Amendment protects "against unreasonable searches and seizures," and requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The probable cause requirement is normally satisfied by an investigating officer's affidavit. *United States v. Riley*, No. 2:12-cr-00478-JAD-VCF, 2014 WL 537013, at *2 (D. Nev. Feb. 7, 2014). Probable cause exists where, "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause "is a practical, common-sense question that is to be resolved by determining those probabilities based upon the totality-of-the-circumstances presented in each individual case." *United States v. Brown*, No. 90-5738, 1992

WL 46838, at *2 (4th Cir. Feb. 12, 1992) (unpublished) (citing *Gates*, 462 U.S. at 230-32). A reviewing court must ensure that the magistrate had a "'substantial basis'" for finding probable cause. *Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271).

The defendants contend that the search warrants were invalid because they were not supported by probable cause. First, they argue that the affidavits did not adequately allege that the XLR-11 sold by the defendants was a controlled substance analogue, and second, that the December 2012 and January 2013 controlled buys were too remote in time to support the warrant, rendering the evidence stale.

The defendants' first claim rests on several related arguments. They argue that the agents lacked the requisite scientific training to discern whether the substances at issue were indeed controlled substance analogues. Further, they contend that the allegation that the substances were controlled substance analogues, particularly the assumption that the second set of controlled buys would yield the same synthetic cannibinoids as the first, was unduly speculative given the shifting drug market and changes to Virginia and federal law between the first and second set of controlled buys. Finally, they claim that the affidavits fail to show an actual sale of synthetic cannabinoid.

-7-

The defendant's arguments are far too exacting for the probable cause standard. "[T]he issue in warrant proceedings is not guilt beyond reasonable doubt but probable cause for believing the occurrence of a crime." *United States v. Harris*, 403 U.S. 573, 584 (1971). The District of Nevada recently rejected a defendant's claim that a law enforcement affidavit alleging distribution of controlled substance analogues was invalid because it was not supported by an affidavit from a trained chemist. *Riley*, 2014 WL 537013, at *3. The court reasoned that whether the law enforcement officers in question "were qualified to determine if the chemical structures of the substances in question were, *in fact*, substantially similar to controlled substances is irrelevant." *Id*. (emphasis added). Rather, "[a]s members of federal agencies tasked with enforcing the drug laws, [they] were qualified to make [the probable cause] assessment" — a substantially lower threshold. *Id*. Although the *Riley* court's decision is not binding on this court, I find the reasoning to be persuasive. As stated in their affidavits, the officers in this case had extensive training and experience in narcotics investigations generally, and synthetic cannabinoid distribution cases in particular. The defendants have offered no reason to doubt their ability to make a probable cause determination regarding these substances.

Defendants' other arguments fail for similar reasons. Probable cause is "the product of 'a practical, common-sense' inquiry" that "does not rest on a scientific

foundation or need to withstand cross-examination." *Id.* (quoting *Gates*, 462 U.S. at 238-39). For purposes of a search warrant, law enforcement does not need to definitely prove that the substances at issue were indeed controlled substance analogues, but merely to show that there is a "fair probability" that they are. *See Gates*, 462 U.S. at 238. While it is true that an affidavit cannot consist of "wholly conclusory statement[s]," *id.* at 239, the affidavit in this case — based on the officers' training and experience with synthetic cannabinoid investigations, their observation of product distribution over time from these stores, and two sets of controlled buys from the defendants — is sufficient to show probable cause that these stores were holding out synthetic cannabinoids for sale to the public.

Second, the defendants argue that the evidentiary basis for the search warrant was stale. They point out that the only laboratory tests confirming the substances they sold to be controlled substance analogues related to the December 2012 and January 2013 controlled buys, and that the search warrant was executed more than nine months later, in September 2013. "While there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993). In assessing staleness, "the court should place great emphasis,

not only upon the age of those facts, but also upon the nature of the allegedly unlawful conduct." *United States v. Boone*, 752 F. Supp. 710, 712 (E.D. Va. 1990). "Facts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence." *Wagner*, 989 F.2d at 75; *see also United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) ("[N]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." (internal quotation marks and citations omitted)); *Boone*, 752 F. Supp. at 712 (noting that "[w]here the activity in question is one of a continuous nature, a lapse of time is of less significance").

In *Rowell*, the Second Circuit upheld the determination of probable cause for a wiretap warrant, despite an eighteen-month delay between procuring statements from confidential informants and seeking the warrant, due to the ongoing nature of the drug conspiracy and the fact that the defendant himself had revealed during a controlled buy that he regularly sold drugs and that he suggested an ongoing relationship with the undercover officer. 903 F.3d at 903. In *Boone*, the Eastern District of Virginia rejected a defendant's staleness claim because the police affidavit "alleged a widespread conspiracy to traffic in controlled substances spanning several years and involving various participants in different locations."

752 F. Supp. at 713. Although the delay between the most recent information and the warrant in that case was only three months, some of the information on which they relied was several years old. *Id.*

Here, the affidavits for the search warrant alleged that the undercover purchasers observed assorted packages with numerous brand names of suspected synthetic cannabinoids held out for sale at Cecil's Variety Store and Get it Here during two sets of controlled buys. The affidavits also alleged that synthetic cannabinoids have been sold at various stores in the area, in an ongoing conspiracy. A second set of controlled buys of suspected synthetic cannabinoids less than a week before the execution of the search warrant confirmed the continuous nature of the defendants' activity. Considering that the defendants were operating storefront operations with synthetic cannabinoids being sold over a period of time, the facts alleged in the officers' affidavits are sufficient to defeat a staleness claim.

### III.

Even assuming that there was no probable cause, I find that the evidence seized should not be suppressed under the good-faith exception.

"The fact that a Fourth Amendment violation occurred — *i.e.,* that a search or arrest was unreasonable — does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009). Even where the

circumstances demonstrate that there was no basis to find probable cause, the fruits of a search still should not be suppressed unless "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984). This good-faith exception, as it is commonly called, does not apply in four circumstances: (1) when the magistrate was misled by a knowing or reckless falsity in the affidavit; (2) when the magistrate abandoned his neutral, judicial role; (3) when an "affidavit [is] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is so "facially deficient" that an officer could not "reasonably presume it to be valid." *Id.* at 923 (internal quotation marks and citations omitted).

None of these conditions apply here. While this is a complicated and changing area of drug enforcement law, the officers here were trained and experienced. Indeed, one of them was advised by a lawyer. *See United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011) ("One relevant circumstance to consider when determining whether an officer's actions were objectively reasonable is whether the officer consulted with an attorney prior to seeking the warrant.").

There is simply no indication that the officers did not act in good faith in relying upon judicial officers' issuance of the warrants in question.

IV.

For these reasons, it is **ORDERED** that the defendants' motions to suppress (ECF Nos. 143 (McConnell), 156 (Constance Nicole Stephens), and 166 (Douglas Eugene Stephens)) are DENIED.

    ENTER: October 1, 2014

    /s/ James P. Jones
    United States District Judge